540 A.2d 494

Carolyn M. MAKOVI

v.

The SHERWIN–WILLIAMS COMPANY.

No. 377, Sept. Term, 1987.

Court of Special Appeals of Maryland.

May 4, 1988.

Certiorari Granted Sept. 2, 1988.

Benjamin Lipsitz, Baltimore, for appellant.

Barry Bach (Antonio R. Lopez and Smith, Somerville & Case, on the brief), Baltimore, for appellee.

Argued before WILNER, BLOOM and KARWACKI, JJ.

WILNER, Judge.

Carolyn Makovi sued her employer, The Sherwin–Williams Company, for wrongful discharge. In her complaint, filed in the Circuit Court for Baltimore City, Ms. Makovi alleged that she was employed, on an "at will" basis, as a chemist in the employer's paint factory; that in August, 1983, she learned that she was pregnant; that on October 10, 1983, the employer told her that "she could not work at her job as long as she was pregnant" and that "her pay and her medical benefits would stop until she became disabled because of her pregnancy"; that her baby was born April 12, 1984; that she both desired and was able to work during the period from October 10, 1983 to April 12, 1984; and that the employer,

"acting on the pretext that it was doing so because plaintiff's removal from her work was required by her physician because of her pregnancy, when in fact it was not, and/or acting on some other pretextual basis and/or some policy basis of its own, excluded her from her work, required her to leave her work and effectively terminated her employment on and as of October 10, 1983."

Ms. Makovi acknowledged that she was permitted to return to work on June 14, 1984. Her "termination" on October 10, she said, was motivated in part by the employer's "desire to get rid of her because she was pregnant and/or during the remaining term of her pregnancy," and thus was contrary to public policy,

"including such policy of the State of Maryland, as expressed, in part, in Article 24 of the Declaration of Rights of the Constitution of Maryland and in Md.Code, 1957, 1979 Repl. Vol., Art. 49B, Sec. 14–18 (Discrimination in Employment), including Sec. 14 (Declaration of Policy) and Sec. 16 (Unlawful Employment Practices) and subsection (b) thereof, prohibiting, *inter alia*, discrimination in employment because of sex, and such policy of the United

States, as expressed, in part, in the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Constitution of the United States and in Title 42, United States Code, Sec. 2000e–2 (Unlawful Employment Practices), including subsection (a) thereof, making unlawful, *inter alia*, employment discrimination because of sex."

For this conduct, Ms. Makovi asked for $500,000 compensatory damages and another $500,000 exemplary damages.

The employer responded with a motion to dismiss, contending, among other defenses, that "Maryland does not recognize a common law cause of action for wrongful discharge where, as in the instant case, there exists a statutory remedy." In an accompanying memorandum and exhibit, the employer averred that Ms. Makovi had filed a grievance in this matter with the Federal Equal Employment Opportunity Commission (EEOC), that in December, 1985, EEOC found no reasonable cause to believe that her allegation was true, dismissed her complaint, and informed her of her right to prosecute her claim in U.S. District Court under Title VII of the 1964 Civil Rights Act, and that she declined to pursue that remedy.

Because of these extraneous allegations, the court treated the employer's motion as one for summary judgment (see Md. Rule 2–322(c)), and on January 14, 1987, granted it. Ms. Makovi has appealed, raising the issue of whether a common law tort action for wrongful discharge, founded on an allegation that the discharge was prompted by and amounted to unlawful employment discrimination by reason of sex, will lie when there is a specific statutory procedure and remedy for the redress of that kind of conduct. We believe that the action does not lie under that circumstance and shall therefore affirm.

Until the mid–1960's, there was no legal impediment to a private employer's discharging or otherwise discriminating against an "at will" employee on account of the employee's race, creed, sex, or handicap. See *Dillon v. Great Atl. &*

*Pac. Tea Co.*, 43 Md.App. 161, 403 A.2d 406 (1979). An "at will" employee served at the pleasure of his employer; the employment could be legally terminated at the pleasure of either party at any time and for nearly any reason.

In 1964, Congress enacted a landmark civil rights law that, among other things, made it an "unlawful employment practice" for any employer subject to the Act to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." P.L. 88–352, § 703(a); 42 U.S.C. § 2000e-2(a). That law also created the EEOC and charged it with receiving and investigating complaints of unlawful employment practices, attempting to eliminate such practices "by informal methods of conference, conciliation, and persuasion," and, failing that, to bring an action against the employer in U.S. District Court. 42 U.S.C. § 2000e-5. In such an action, if the court finds that the employer "intentionally" engaged or is engaging in an unlawful employment practice, it may enjoin the practice "and order such affirmative action as may be appropriate," including reinstatement with back pay for up to two years. § 2000e-5(g).

In enacting this statute, Congress made clear its intent that the States play a leading role in enforcing the law. In § 2000e-5(c) [P.L. 88–352, § 706(b)], it provided that, if the alleged unlawful employment practice occurred in a State having a State or local law prohibiting the unlawful employment practice and authorizing a State or local authority to "grant or seek relief from such practice or to institute criminal proceedings with respect thereto," the employee could not complain to EEOC until 60 days after proceedings had been commenced under the State or local law. See also *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 755–56, 99 S.Ct. 2066, 2071–72, 60 L.Ed.2d 609 (1979).

One year later, nearly to the day, the General Assembly responded to the invitation of Congress. By 1965 Md. Laws, ch. 717, it declared equal employment opportunity to

be a matter of State public policy and, to that end, enacted the "unlawful employment practice" provisions of § 2000e–2(a) as State law. See current art. 49B, § 16(a). Enforcement of the new provisions was placed in the hands of the Human Relations Commission (then known as the Interracial Commission). Like its Federal counterpart, the EEOC, the State Commission was empowered to receive and investigate complaints. Although initially the Commission's enforcement powers were very limited, by virtue of amendments made in 1977, it is now empowered, upon finding that the employer has engaged in an unlawful employment practice, to order reinstatement with up to two years back pay and "any other equitable relief that is deemed appropriate." 1977 Md. Laws, ch. 937; art. 49B, § 11(e). Upon an employer's failure to comply with a Commission order, the Commission is authorized to sue in court to enforce compliance. Art. 49B, § 12.

The tort action pled here was first recognized in Maryland in *Adler v. American Standard Corporation*, 291 Md. 31, 432 A.2d 464 (1981). Adler was an "at will" employee who was allegedly discharged for bringing to the attention of higher corporate officials allegations of bribery, falsification of records, misuse of corporate funds, and other wrongdoing by company personnel. He sued in tort, claiming that his discharge was motivated by a desire to conceal corporate improprieties and illegal activities and was, for that reason, in contravention of public policy. The issues, certified to the Court of Appeals by the U.S. District Court, were whether an action for abusive discharge would lie under Maryland law and, if so, whether Adler's complaint stated such an action.

The Court began its discussion of the substantive issue by confirming the general common law rule that an employment contract of indefinite duration may be legally terminated at the pleasure of either party at any time. It observed that many States, including Maryland, had, by statute, "engrafted exceptions upon the terminable at will doctrine" and precluded discretionary discharges in certain

instances, referring, by way of example, to art. 49B, § 16(a)(1) (precluding discharge based on race, etc.), art. 89, § 43 (precluding discharge for reporting violations of the Occupational Safety and Health law), art. 101, § 39A (precluding discharge for filing a workmen's compensation claim), Comm.Law art., § 15–606 (precluding discharge because of an attachment of the employee's wages), and Cts. & Jud.Proc. art., §§ 8–105 and 8–401 (precluding discharge because of the employee's jury service). The Court noted, however, that Adler's discharge, for which he sought recompense, "was not specifically prohibited by any Maryland statute"; he was seeking an additional "judicial exception" to the terminable at will doctrine "to permit an at will employee, discharged in a manner that contravenes public policy, to maintain a cause of action for abusive or wrongful discharge against his former employer." 291 Md. at 35–36, 432 A.2d 464.

It was in that context that the Court considered the competing interests at stake—those of the employee, the employer, and society at large. From the employee's perspective, said the Court, the routine consequences of a discharge, though harsh, would not, of themselves, warrant a rule forbidding termination simply because the termination appeared wrongful to a court or jury. "On the other hand," it continued, "an at will employee's interest in job security, particularly when continued employment is threatened not by genuine dissatisfaction with job performance but because the employee has refused to act in an unlawful manner or attempted to perform a statutorily prescribed duty, is deserving of recognition." *Id.*, at 42, 432 A.2d 464. Society's interest is "in ensuring that its laws and important public policies are not contravened." *Id.* Balancing these interests with those of the employer in maintaining his discretionary authority, the Court concluded that "Maryland does recognize a cause of action for abusive discharge by an employer of an at will employee when the motivation for the discharge contravenes some clear mandate of public policy...." *Id.*, at 47, 432 A.2d 464.

Contrary to the position taken by the employer here, we see no clear expression in *Adler* itself, one way or the other, as to whether the common law action it recognized is preempted or otherwise unavailable where an alternative statutory remedy exists. That issue was not before the *Adler* Court and we see no indication that it was specifically considered. It does seem clear, however, that the Court was focusing on what it perceived to be a void in the law—a discharge not expressly and directly precluded by some specific statute but which nevertheless contravened some other general statement of public policy. If there were already an adequate alternative remedy in existence, the legitimate interest of the employee that the Court identified as being deserving of recognition would indeed have attained that recognition, and the newly created common law remedy would be unnecessary to assure its protection.[1] This suggests the notion that the new cause of action was not intended to supplant existing statutory remedies, at least not those specifically crafted and effective to provide an adequate remedy for the unlawful act. Compare *Ewing v. Koppers Co.*, 312 Md. 45, 537 A.2d 1173 (1988), where the Could held that, but for Federal preemption in that case, an action for abusive discharge will lie in favor of a contractual employee discharged for filing a workmen's compensation claim. Unlike the laws at issue here, however, the statute proscribing that conduct, while subjecting the employer to a

---

1. The *Adler* Court left no doubt that this was a new cause of action it was creating; it was not simply declaring what the Maryland common law had always been. At 42–43 of 291 Md., 432 A.2d 464, it said:
   "The common law terminable at will doctrine in Maryland is, of course, subject to modification by judicial decision where this Court finds that it is no longer suitable to the circumstances of our people.... Nor have we hesitated to adopt a new cause of action by judicial decision where that course was compelled by changing circumstances.... The reasoning of the growing number of jurisdictions that have recognized wrongful discharge *as a new cause of action* persuades us that, in a proper case, such an action *should be adopted* in this State."
   (Citations omitted; emphasis added.)

criminal penalty, affords no remedy or relief to the employee.

In point of fact, as Ms. Makovi candidly acknowledges, most of the courts that have considered the question have come to the view that a wrongful discharge action will not lie where a remedy is available under 42 U.S.C. § 2000e–5 or its State counterparts, including art. 49B, §§ 11 and 12. Four judges of the U.S. District Court for the District of Maryland have so held. See *Glezos v. Amalfi Ristorante Italiano, Inc.,* 651 F.Supp. 1271 (D.Md.1987, J. Young) (sex discrimination); *Chekey v. BTR Realty, Inc.,* 575 F.Supp. 715 (D.Md.1983, J. Miller) (age discrimination); *MacGill v. Johns Hopkins Univ.,* 33 F.E.P. Cases 1254 (D.Md.1983, J. Ramsey) (age discrimination); *Vasques v. National Geographic Society,* 34 F.E.P. Cases 295 (D.Md.1982, J. Jones) [available on WESTLAW, 1982 WL 1728] (national origin).[2]

---

**2.** *See also Bruffett v. Warner Communications, Inc.,* 692 F.2d 910 (3d Cir.1982) (construing Pennsylvania law); *Napoleon v. Xerox Corp.,* 656 F.Supp. 1120 (D.Conn.1987); *Horbaczewsky v. Spider Staging Sales Co.,* 621 F.Supp. 749 (N.D.Ill.1985); *Crews v. Memorex Corp.,* 588 F.Supp. 27 (D.Mass.1984); *Schroeder v. Dayton–Hudson Corp.,* 448 F.Supp. 910 (E.D.Mich.1977); *Salazar v. Furr's, Inc.,* 629 F.Supp. 1403 (D.N.M.1986); *Mein v. Masonite Corp.,* 109 Ill.2d 1, 92 Ill.Dec. 501, 485 N.E.2d 312 (1985); *Grzyb v. Evans,* 700 S.W.2d 399 (Ky.1985); *Melley v. Gillette Corp.,* 19 Mass.App. 511, 475 N.E.2d 1227 (1985), aff'd 397 Mass. 1004, 491 N.E.2d 252 (1986); *Howard v. Dorr Woolen Co.,* 120 N.H. 295, 414 A.2d 1273 (1980); *Allen v. Safeway Stores, Inc.,* 699 P.2d 277 (Wyo.1985). *Contra McKinney v. National Dairy Council,* 491 F.Supp. 1108 (D.Mass.1980) (criticized by judges on the same bench, *see Crews, supra,* and by the Massachusetts lower appellate court, *Melley, supra* ); *Hernden v. Consumers Power Co.,* 72 Mich.App. 349, 249 N.W.2d 419 (1976) (permitting employee to press a "cumulative and independent judicial remedy for redress of his right to freedom from age discrimination in private employment," despite existence of Michigan State Fair Employment Practices Act); *cf. Van Scoyk v. St. Mary's Assumption Par. Sch.,* 224 Kan. 304, 580 P.2d 1315 (1978) (permitting an employee to file an independent tort action based on employment discrimination where employee files with Civil Rights Commission but claim was dismissed prior to an adjudication, but noting that the employee's first recourse must be to the Commission); *Cancellier v. Federated Dept. Stores,* 672 F.2d 1312 (9th Cir.1982) (holding that the Federal Age Discrimination in Employment Act did not preempt an employee, claiming age discrimination, from pressing a claim for breach of implied covenant of good faith and fair dealing

Although we do not necessarily subscribe to all of the reasons cited in these cases,[3] we do believe that the end conclusion is a correct one. It is consistent with the conclusion we reached in the analogous case of *Silkworth v. Ryder Truck Rental*, 70 Md.App. 264, 520 A.2d 1124, *cert. denied* 310 Md. 2, 526 A.2d 954 (1987). The fact is that there is a specific statutory remedy for this kind of conduct and a specific statutory procedure for obtaining that remedy. The Legislatures—Congress and the General Assembly—obviously gave careful consideration to both aspects—what the remedy and the dispute resolution process should be. They determined, at a time when there was no other remedy, that, as a matter of public policy, the remedy should be restricted essentially to injunctive relief, where appropriate, reinstatement, and a limited amount of back pay. Unlike in other statutes, they did not allow private actions for damages, although they certainly could have done so. To extend *Adler* into this area would thus, at the same time, (1) create a remedy that neither Congress nor the General Assembly thought necessary or appropriate and (2) afford relief beyond the area of apparent concern to the

---

under California common law), *cert. denied* 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982); *Lally v. Copygraphics*, 85 N.J. 668, 428 A.2d 1317 (1981) (employee dismissed for filing a worker's compensation claim may proceed under statutory procedure, which includes criminal penalties and civil remedies, N.J.Stat.Ann. § 34:15–39.1 (West 1987 Supp.), or under common law for retaliatory discharge).

**3.** Some of the District Court cases in Maryland, for example, cited *Soley v. St. Comm'n on Human Rel.*, 277 Md. 521, 356 A.2d 254 (1976), for the proposition that "the statutory remedy under article 49B is exclusive." *Vasques, supra*, 34 F.E.P. at 297. That may be too broad a reading of *Soley*. At issue there was whether a declaratory judgment action would lie to contest the validity of subpoenas issued by the Human Relations Commission as part of an investigation it was conducting. The Court held that such an action would not lie—that the respondent had a specific administrative remedy under art. 49B with limited judicial review under the Administrative Procedures Act and that statutory procedure for contesting the subpoenas and the evidence obtained pursuant to them had to be followed in lieu of a proceeding under the declaratory judgment act.

*Adler* Court and into an area where statutory relief is already available.

It is for these reasons, which conform to the more general requirement that where a specific statutory remedy or procedure exists it must be followed, that we shall affirm.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.