Peggy CHILDERS, Plaintiff–Appellant,

v.

The CHESAPEAKE AND POTOMAC TELEPHONE COMPANY, A New York Corporation; David Charles Seal; Ray N. Brown, M.D.; Robert E. Gerring, Defendants–Appellees.

No. 87–1727.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 1, 1988.

Decided July 28, 1989.

Rehearing and Rehearing In Banc Denied Sept. 7, 1989.

William Ober, Baltimore, Md. (Daniel Cohen, Office of Daniel Cohen, on brief), for plaintiff-appellant.

Leonard Edwin Cohen (Mary E. Pivec, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., on brief), for defendants-appellees.

Before PHILLIPS and WILKINSON, Circuit Judges, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.

WILKINSON, Circuit Judge:

After being discharged by the Chesapeake & Potomac Telephone Company, Peggy Childers filed this action in Maryland state court against C & P and three of C & P's employees, alleging wrongful discharge and intentional infliction of emotional distress. She claimed that her discharge was in retaliation for filing workers' compensation claims and violated Maryland's public policy against handicap discrimination. Defendants removed the action to federal district court, claiming that Childers' state-law claims were preempted by § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. The district court found that Childers' state claims were preempted by § 301 and therefore properly removed. The district court granted summary judgment in favor of C & P and the individual defendants, holding that Childers failed to satisfy the prerequisites of a § 301 cause of action, 670 F.Supp. 624.

We affirm, but for different reasons than those stated by the district court. We hold that a federal court has jurisdiction in a removed § 301 action to address the merits of alleged state-law claims during the course of determining its own jurisdiction, and, that it lies within the discretion of a federal court to dismiss meritless state-law claims during the course of its preemption inquiry. *See Washington v. Union Carbide Corp.,* 870 F.2d 957, 959–62 (4th Cir. 1989). Here the invalidity of Childers' state claims is apparent and entitled defendants to summary judgment. We decline, therefore, to address appellees' preemption claims.

I.

Peggy Childers began working with C & P in 1973 as a telephone installer. She was a member of the Communications Workers of America, AFL–CIO, and its Local 2100. The terms and conditions of her employment with C & P were governed by a collective bargaining agreement between C & P and the union, which prohibited termination of employees without "just cause" and vested C & P employees with numerous rights and benefits, including the right to grieve and arbitrate employment disputes.

On September 3, 1981, Childers injured her finger while installing a telephone for C & P. She filed a workers' compensation claim and was awarded temporary total disability benefits through October 8, 1981. Because of her disability, C & P removed Childers from phone installation and promoted her to the position of central office technician. In June of 1983, Childers filed a workers' compensation claim for permanent partial disability benefits for her hand injury.

Also in June of 1983, Childers began psychiatric treatment for depression which she alleged resulted from her hand injury and C & P's reaction to it. On July, 11, 1983, Childers notified C & P that the conditions of her employment were intolerable and that she could no longer work for the company. Her last day of work with C & P was July 25, 1983. On October 3, 1983, she filed a workers' compensation claim for temporary total disability benefits based on an alleged work-related psychiatric disability.

C & P approved a medical disability leave for Childers pending a psychiatric determination of her ability to work. Under the terms of the collective bargaining agree-

ment, she was paid medical benefits during this leave of absence. On November 30, 1983, C & P's psychiatrist concluded that Childers did not exhibit a work-related psychiatric disability. C & P's medical director therefore determined that Childers was able to return to work and would not receive medical disability benefits after December 8, 1983. Childers was notified of the company's decision but refused to return to work. On December 22, 1983, C & P notified Childers that she would be removed from the payroll if she failed to return to work by January 3, 1984. C & P terminated her employment on January 4, 1984 when she refused to return to the company.

On February 10, 1984, Childers requested the union to file a grievance on her behalf. The union refused to pursue the grievance because it was not filed within the time limit established by the collective bargaining agreement. The National Labor Relations Board also declined to intervene.

On January 5, 1987, Childers filed suit in the Circuit Court for Baltimore City against C & P and its employees, David Charles Seal, Ray N. Brown, and Robert E. Gerring, alleging wrongful discharge on the basis of handicap discrimination, retaliatory discharge for filing workers' compensation claims, and intentional infliction of emotional distress. C & P and the individual defendants removed the action to federal district court pursuant to 28 U.S.C. §§ 1441(b) and 1331, claiming that Childers' state-law claims were completely preempted by § 301 of the Labor Management Relations Act of 1947 (LMRA). Childers moved to remand the case to state court, asserting that her complaint was based solely on Maryland law and was therefore not removable to federal court.

On September 30, 1987, the district court denied Childers' motion to remand and granted defendants' motion for summary judgment. The district court found that Childers' state-law claims were preempted by § 301 and therefore properly removed to federal court. The district court granted summary judgment in favor of C & P and

the individual defendants because Childers failed to exhaust her contractual remedies and her § 301 action was barred by the federal statute of limitations.

Childers appeals.

## II.

We shall review in parts A and B the basic principles of federal jurisdiction in § 301 preemption cases and explain in part C how our analysis differs from that in the dissenting opinion.

## A.

The presence of federal question jurisdiction is generally determined by the "well-pleaded complaint" rule. *Gully v. First National Bank,* 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936); *Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Federal jurisdiction exists, in other words, "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987).

In most instances, the plaintiff is the master of the complaint and may avoid federal jurisdiction by relying exclusively on state law. The doctrine of "complete preemption," however, serves as an exception to the well-pleaded complaint rule. *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 22–24, 103 S.Ct. 2841, 2852–54, 77 L.Ed.2d 420 (1983). If a federal cause of action completely preempts a state-law claim, "any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law," *id.* at 24, 103 S.Ct. at 2854, and is removable to federal court. The Supreme Court has held that the preemptive effect of a federal statute may be so "extraordinary" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987). The complete preemption exception to the

well-pleaded complaint rule "is applied primarily in cases raising claims preempted by § 301 of the LMRA." *Caterpillar,* 107 S.Ct. at 2430. If appellant's claims are preempted by § 301 of the LMRA, removal was appropriate in this case.

### B.

We turn next to the nature of the preemption inquiry itself. Section 301(a) of the LMRA, 29 U.S.C. § 185(a), provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties....

In *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957), the Supreme Court held that § 301 not only provides federal jurisdiction over controversies involving collective bargaining agreements but also authorizes federal courts to fashion a body of federal law for the enforcement of collective bargaining agreements.

The principle of § 301 preemption of state-law claims was more fully developed in later decisions. The Court concluded in *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), that Congress enacted § 301 with the intent that federal labor law doctrines would uniformly prevail over inconsistent state law. *See also Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). However, in *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 1882–83, 100 L.Ed.2d 410 (1988), the Court held that a state claim was not preempted by § 301, despite the fact that resolution of the state claim might involve the same factual inquiry under the collective bargaining agreement. According to the Court, the application of state law is preempted by § 301 "only if such application requires the interpretation of a collective-bargaining agreement." *Id.,* 108 S.Ct. at 1885.

The preemptive effect of § 301 thus depends upon the elements of the purported state-law claim. We hold therefore that a federal district court has the discretion to address the validity of the alleged state-law claim during the course of its preemption inquiry. If the federal court determines that the claimant has alleged a colorable state-law cause of action, the court then must determine whether the state claim is "independent" of the collective bargaining agreement and therefore not preempted. *Id.* at 1882. The action may be dismissed, however, if the claimant has failed to allege a cause of action under state law. *See Washington,* 870 F.2d at 959–62. A federal court's determination of state law made in the course of determining a question of federal jurisdiction is a judgment on the merits, Fed.R.Civ.P. 41(b); the dismissal may therefore be with prejudice.

### C.

The discretion of district courts to dismiss state claims is limited to those whose lack of merit is apparent. Where the plaintiff appears to state a claim under state law, a federal district court would be well-advised to proceed to the § 301 preemption inquiry and, if the state claim is not preempted, to remand the entire action to state court. Where the complaint, however, plainly fails to state a cause of action under state law, it is open to the federal court to dismiss it.

We reject the dissent's assertion that this is an act without jurisdictional authority. "A colorable state-law cause of action is a predicate to a § 301 preemption claim," *Washington,* 870 F.2d at 959, and a district court "may logically wish to examine the elements of a state cause of action in order to resolve more precisely the preemption question." *Id.* at 961. Familiarity with the elements of the state-law claim is thus an indispensable requirement—and an inevitable byproduct—of the preemption and jurisdictional analysis.

Because the dissenting opinion would prevent a federal court from dismissing patently meritless state-law claims during

the course of its § 301 preemption inquiry, we reject its position as litigious. Courts, whether federal or state, do not exist merely to resolve claims; they exist to decide lawsuits. The dissent's approach would send litigants through a maze of different court systems, difficult preemption inquiries, and needless appeals even where the underlying state claims were trivial. The plaintiff might bring a claim in state court, have it removed to federal court, have the preemption inquiry extensively argued in federal court, both at the trial level and on appeal, have the state claim held to be not preempted on appeal, and have the entire action remanded again to state court with no more than a preliminary question decided. The burdens that this prolonged journey would impose upon litigants are simply prohibitive.

The dissent also advances a simplistic model of federalism based on the notion that only state courts may decide questions of state law and only federal courts may decide questions of federal law. Such a view violates the spirit of the two seminal Supreme Court decisions in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Certainly, by depriving federal district courts of any discretion to dismiss insubstantial state claims, the dissent takes a more rigid approach than the *Gibbs* decision. It also undermines the values of judicial economy and repose in cases where a claimant fails to allege any valid state cause of action and where it is perfectly clear that nothing of substance exists to be preempted. A federal court has jurisdiction to determine its own jurisdiction, *United States v. United Mine Workers of America*, 330 U.S. 258, 292 n. 57, 67 S.Ct. 677, 695 n. 57, 91 L.Ed. 884

(1947), and possesses the discretion to address a state claim on its merits in the process of determining its own jurisdiction under *Caterpillar*, 107 S.Ct. at 2425. *See Washington*, 870 F.2d at 960. The guidelines under which this discretion must be exercised have been examined at length in our earlier decision in *Washington*, 870 F.2d at 959–62, which the dissenting opinion essentially seeks to distinguish on the grounds that this is a removed case. We made clear in *Washington*, however, that district courts possess the discretion to dismiss insubstantial state claims both in original and removed cases, and we rely upon the discussion in the *Washington* decision in our affirmance of the judgment here. *Id.* at 960.

### III.

With the above principles in mind, we turn to the state claims in the instant case. The § 301 preemption inquiry is predicated on the existence of a colorable state cause of action. *Id.* at 959. We therefore ask whether appellant presents any colorable state claim the elements of which might require interpretation of the collective bargaining agreement and therefore be preempted under § 301. Appellant contends that she has valid causes of action for wrongful discharge based on the Maryland Workmen's Compensation Act and on Maryland's public policy against handicap discrimination. She also asserts that defendants' conduct supports four separate causes of action for intentional infliction of emotional distress under Maryland law. We think appellant's state claims are plainly without merit, and we need not reach the question of whether § 301 of the LMRA in fact preempts them.[1]

---

1. The dissenting opinion argues that *Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), prevents this court from addressing the state claims for the first time on appeal. In doing so, the dissent presents *Singleton* as too absolute and unqualified a bar against such appellate review in the first instance. *Singleton*, in fact, announced a more flexible standard. The Supreme Court recognized that

   [t]he matter of what questions may be taken up and resolved for the first time on appeal is

one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases. We announce no general rule. Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt. . . .

*Id.* at 121, 96 S.Ct. at 2877, *citing Turner v. City of Memphis*, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962).

## A.

We first address Childers' claim of wrongful discharge based on the Maryland Workmen's Compensation Act. In *Kern v. South Baltimore Gen. Hosp.*, 66 Md.App. 441, 504 A.2d 1154 (1986), the Maryland Court of Special Appeals stated that the Maryland Workmen's Compensation Act expresses the state's public policy that an employee may not be discharged for filing a workers' compensation claim. According to the court, a wrongful discharge action lies when an employee is discharged "solely" because he has filed for workers' compensation benefits.[2] This wrongful discharge action extends to employees "at will," as well as to employees who serve under contract. *Ewing v. Koppers Co.*, 312 Md. 45, 537 A.2d 1173 (1988).

The Maryland courts have been aware, however, that § 301 of the LMRA may preempt a state-law remedy in favor of employees who serve pursuant to a collective bargaining agreement. *Id.*, 537 A.2d at 1175–79. Maryland therefore recognizes a "conditional tort remedy" for employees who serve pursuant to collective bargaining agreements which is consistent with § 301 preemption principles. More specifically, a discharged employee's wrongful discharge action is conditioned on the outcome of the dispute resolution process fixed by the collective bargaining agreement and, if necessary, a federal action pursuant to § 301 of the LMRA. A state cause of action will not lie unless the employee has exhausted these alternative remedies and has obtained a finding that he was discharged without just cause. *See Allen v. Bethlehem Steel Corp.*, 76 Md. App. 642, 547 A.2d 1105 (1988); *Ewing*, 537 A.2d at 1173.

If, for example, a discharged employee files a grievance pursuant to the collective bargaining agreement and an arbitrator finds that the employee was discharged without just cause, the Maryland courts will permit a subsequent state action for wrongful discharge based on the Maryland Workmen's Compensation Act. *Allen*, 547 A.2d at 1105. In such a case, a subsequent state-court finding that the employee was discharged in violation of Maryland public policy as expressed in the statute would not be inconsistent with the arbitrator's decision, and would not violate the principles of § 301 preemption. *Id.* at 1110. Resolution of the state-law claim would not require a court to interpret the collective bargaining agreement and § 301 would therefore not preempt the application of state law. As the Maryland Court of Appeals stated in *Ewing*:

> In such [a] case, the findings necessary for the resolution of the grievance would not be disturbed, but rather would serve as a foundation for an additional action which could be successful only if the employee could show that the motive for discharge was retaliation for the filing of a worker's compensation claim. The state claim would be supplemental, and no possibility would exist that the federal labor contract scheme established by § 301 would be frustrated.

537 A.2d at 1178.

If the arbitrator finds, however, that the employer had just cause for discharging the employee, Maryland law will not provide a supplemental state-law remedy for wrongful discharge. *Id.* at 1179. In such a case, an employee could not have been discharged "solely" for filing a workers' compensation claim and therefore could not

Certainly, we ascribe to the general principle that an appellate court should not resolve in the first instance claims that have not been ruled upon by the district court. The fairness of this rule, both to litigants and district courts, is apparent. In this instance, however, all of the questions being passed upon are squarely posed to the court as matters of law from the face of the complaint. Plaintiff's primary claim, that addressed in III A, was briefed and argued by both parties on appeal and indeed plaintiff submitted supplemental authority on the question to this court. Under these circumstances, a

remand on a point whose outcome is apparent would do a disservice to both parties. *See Turner*, 369 U.S. at 350, 82 S.Ct. at 805.

2. The Maryland Workmen's Compensation Act provides in pertinent part that:

> (a) An employee entitled to benefits under this article may not be discharged from employment solely because he files a claim for compensation under this article.

Md.Code Ann. Art. 101, § 39A.

satisfy the requirements of the Maryland Workmen's Compensation Act. *See* Md. Code Ann. Art. 101, § 39A.

■ In the instant case, appellant failed to exhaust her contractual remedies and therefore cannot avail herself of the supplemental state-law remedy for wrongful discharge based on the Maryland Workmen's Compensation Act. Contrary to her contention that she may eschew her contractual remedies, the Maryland courts require that the question of whether she was discharged for just cause be resolved by the process contemplated by the parties in the collective bargaining agreement and if necessary by a federal action under § 301 of the LMRA.[3]

Such a conditional tort remedy is permissible given the Supreme Court's analysis in *Lingle.* The Court recognized in *Lingle* that the responsibility for defining the elements and scope of a state cause of action rests with the state legislature and state courts. 108 S.Ct. at 1881–83. *See also Allis–Chalmers,* 471 U.S. at 213–14, 105 S.Ct. at 1912–13. Section 301 of the LMRA ensures that federal law will be used to interpret collective bargaining agreements; it "says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." *Lingle,* 108 S.Ct. at 1883. *See also Allis–Chalmers,* 471 U.S. at 211, 105 S.Ct. at 1911. Maryland may therefore require a discharged employee, who serves pursuant to a collective bargaining agreement, to exhaust his contractual and federal remedies before he may pursue a state action in tort.

The dissenting opinion recognizes that the Maryland cause of action for retaliatory discharge in favor of a union employ-

ee has been "substantially curtailed." At 1271. The dissent notes that:

> the remedy could only be made available to union employees as a supplemental remedy to any contractual remedy for the same employer conduct previously awarded in arbitration under a labor contract. So construed, the remedy could only be asserted after a favorable resort by the employee to such grievance procedures; if such grievance was pursued and rejected, no state claim could be maintained.

*Id.* (footnote omitted). In the dissenting opinion's view, however, the Maryland conditional tort remedy is based on the Maryland courts' "erroneous perception" regarding the preemptive scope of § 301. The dissent speculates that if confronted with the issue again, the Maryland courts would significantly recast the cause of action. Federal courts, however, are required under *Erie,* 304 U.S. at 64, 58 S.Ct. at 817, to rely upon state law as it presently exists and not to invite state courts to redefine their own state tort remedies. The contours of the Maryland cause of action for wrongful discharge is a settled question of state law and appellant has failed to satisfy its elements.

### B.

■ Childers also contends that she was unable to work due to a psychiatric disability and that C & P wrongfully discharged her in violation of Maryland's public policy against handicap discrimination. Her allegations, however, cannot sustain a state cause of action for wrongful discharge.

Maryland law explicitly prohibits employment discrimination based on physical or mental handicap, *see* Md.Code Ann. Art. 49B, § 16; it does not, however, create a private right of action in tort. *Soley v. Maryland Comm'n on Human Relations,*

---

**3.** As the district court found, appellant also cannot state a valid cause of action under § 301 of the LMRA. Appellant filed an untimely grievance and then chose not to appeal when the grievance was rejected. She therefore failed to exhaust her contractual remedies, a formal prerequisite of a § 301 cause of action. *See Clayton v. International Union, UAW,* 451 U.S. 679, 681, 101 S.Ct. 2088, 2091, 68 L.Ed.2d 538 (1981).

In addition, § 301 actions are subject to the six month statute of limitations found in § 10(b) of the National Labor Relations Act. *See DelCostello v. Teamsters,* 462 U.S. 151, 169, 103 S.Ct. 2281, 2293, 76 L.Ed.2d 476 (1983). Appellant, however, filed her complaint almost three years after her cause of action arose.

277 Md. 521, 356 A.2d 254 (1976); *Dillon v. Great Atlantic & Pacific Tea Co.,* 43 Md. App. 161, 403 A.2d 406 (1979). A private cause of action for wrongful discharge based on Article 49B is not recognized because there is an exclusive statutory procedure and administrative remedy for redress of employment discrimination in Maryland. *Makovi v. Sherwin–Williams Co.,* 75 Md. App. 58, 540 A.2d 494 (1988) (administrative remedy "restricted essentially to injunctive relief, where appropriate, reinstatement, and a limited amount of back pay"). *See also Parlato v. Abbott Laboratories,* 850 F.2d 203 (4th Cir.1988); *Glezos v. Amalfi Ristorante Italiano, Inc.,* 651 F.Supp. 1271, 1275–76 (D.Md.1987); *Chekey v. BTR Realty, Inc.,* 575 F.Supp. 715 (D.Md.1983).

Childers' sole avenue of redress was thus to the Maryland Human Relations Commission. *Cf. Dillon,* 403 A.2d at 409. She in fact complained to the Commission, and on May 5, 1988, the Commission reported that its investigation failed to substantiate her allegations of employment discrimination. The Commission found no probable cause to believe that C & P discriminated against her on the basis of physical or mental handicap in violation of Article 49B. The Commission also found that C & P attempted to accommodate Childers' disability and that it was unreasonable to expect C & P to extend her disability leave indefinitely when there was no medical evidence to substantiate her leave of absence. The Commission concluded that C & P was justified when it removed appellant from the payroll.

### C.

Finally, Childers alleges separate causes of action for intentional infliction of emotional distress against C & P and each of the individual defendants. Her allegations, however, do not rise to the level of outrageous conduct necessary to sustain such a cause of action in Maryland.

A cause of action for emotional distress does not exist to redress every instance of dissatisfaction in the workplace. Under Maryland law, the elements of a prima facie case for the tort of intentional inflic-

tion of emotional distress are: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. *Harris v. Jones,* 281 Md. 560, 380 A.2d 611, 614 (1977). The *Harris* court noted that liability will be imposed " 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Id.* (*citing* Restatement (Second) of Torts § 46 comment d (1965)). Whether the alleged wrongful conduct may reasonably be regarded as extreme and outrageous, "is for the court to determine, in the first instance." *Id.* 380 A.2d at 615.

■ Childers alleges in her complaint that C & P contested her workers' compensation claims and terminated her employment. This fails to state a cause of action under state law. Even assuming that Childers alleges severe emotional distress and the requisite intent and causal connection, C & P cannot be liable for the infliction of emotional distress where it has done no more than exercise its legal rights in a permissible way. *See Young v. Hartford Accident & Indemnity Co.,* 303 Md. 182, 492 A.2d 1270, 1277–78 (1985). In this case, C & P has done no more than exercise its rights under Maryland law. C & P was not obligated to accept the conclusion of appellant's psychiatrist that she was unable to work due to a psychiatric disability. C & P also had the right to insist that appellant be examined by a psychiatrist of C & P's choosing. *See id.,* 492 A.2d at 1278. In addition, C & P was free to contest Childers' workers' compensation claims. The Maryland Workmen's Compensation Act, for example, explicitly requires the Maryland Workers' Compensation Commission to order a hearing if requested by the employer. Md.Code Ann. Art. 101, § 40(a). It will be the "rare case" where the nonpayment of workers' compensation benefits will satisfy the elements

of the intentional infliction of emotional distress. *See Gallagher v. Bituminous Fire & Marine Ins. Co.*, 303 Md. 201, 492 A.2d 1280, 1285 (1985).

■ Childers' emotional distress claims against the individual defendants are likewise insufficient under state law. David Seals, C & P's compensation claims manager, contested appellant's applications for workers' compensation benefits. Ray Brown, C & P's medical director, ordered Childers to return to work based on the recommendation of a company-appointed psychiatrist that she was medically able to do so. Robert Gerring, C & P's district manager of switching services, was the individual who informed appellant on December 22, 1983 that she would be discharged if she did not return to work. Each person had the right—and in some cases, the obligation—to act as he did. None of this conduct exceeds the bounds of that normally tolerated in a civilized society. Appellant therefore has failed to allege a valid cause of action for intentional infliction of emotional distress under Maryland law.

### IV.

Although the scope of § 301 preemption is a matter of federal law, a court first must look to state law to define the nature and extent of the alleged state cause of action. *Allis–Chalmers*, 471 U.S. at 213–14, 105 S.Ct. at 1912–13. We hold that it lies within the discretion of a federal court to dismiss state claims on the merits before resolving the preemption inquiry if the underlying state claims are patently without

merit. In this case, we do not need to reach the question of whether § 301 of the LMRA preempts Childers' purported state remedies because she has plainly failed to state any cause of action under Maryland law. There are, in short, no state claims here to preempt.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

PHILLIPS, Circuit Judge, dissenting:

I disagree with two critical aspects of the majority opinion, and with the resulting judgment of the court.

### I

I disagree first and principally with the broad threshold holding that upon the removal of a union employee's state-law tort action on an employer-defendant's claim of federal § 301 preemption, a federal removal court can dismiss the state-law action on the merits, without ever addressing the preemption question, if the "invalidity" of the state-law claims as pleaded is "apparent." At 1260. This implies that without first deciding that it has any basis in federal jurisdiction, a federal court may summarily dismiss such an action on the merits for failure of the complaint to state a claim *under state law*. The majority justifies this seemingly drastic result by drawing on a proposition that, so far as I am aware, is asserted *a priori*: that a federal *removal* court has jurisdiction to decide a state-law claim on the merits as an aspect of determining its own jurisdiction. At 1260.[1]

1. Having held this at the outset, the majority thereby avoids review of the principal issue actually briefed and argued by the parties—whether the district court erred in finding the state-law claims preempted under § 301. Avoiding that concededly difficult issue (actually several issues), the majority affirms on a theory never raised by the parties nor addressed by the district court: that the state-law claims could and should properly have been dismissed on the merits under state law, because "a federal court has jurisdiction in a removed § 301 action to address the merits of alleged state-law claims during the course of determining its own jurisdiction...." At 1260. Aside from the substantive error that I think this entails, the procedure

is equally questionable. We may certainly decide cases on such completely new theories in appropriate circumstances; but this seems to me almost certainly not such a case. *See Singleton v. Wulff*, 428 U.S. 106, 119–21, 96 S.Ct. 2868, 2876–78, 49 L.Ed.2d 826 (1976) (court of appeals decision on the merits was "an unacceptable exercise of its appellate jurisdiction" where district court had dismissed solely on standing grounds, defendant had argued only that issue, and issue resolved by court of appeals was not beyond doubt).

My concern here that we not decide this case on the basis of a *new theory* is distinguishable from the majority's appropriation of the *Singleton* standard—a standard on which we do not

As indicated, I know of no basis for this proposition and the result to which it leads, either in specific precedent or in general removal and preemption principles.[2] Indeed, it appears to me to fly directly in the face of the relevant concerns of comity and federalism that underlie both of those principles. It could allow a wholly meritless claim of § 301 preemption to empower a federal court to dismiss on the merits a removed state-law action over which the federal court had no possible basis for exercising subject matter jurisdiction. Indeed, this approach precludes any true inquiry by the federal court into its jurisdiction. By directing the court's threshold and potentially dispositive inquiry into the merits of the claim under state substantive law, jurisdiction is effectively bootstrapped[3] in the very process of rejecting the claim on the merits.

Looked at from the perspective of the state court plaintiff deprived of her forum of choice and of the state courts deprived of jurisdiction by this means, the comity and federalism concerns are even more stark. If the claim of preemption is meritless (or even frivolous)—a possibility that is never addressed by any court under the majority's regime—the state court plaintiff winds up having her state-law claim dismissed on the merits by a federal court which in objective fact has no power to decide it. If the state-law claim's viability turns on an unsettled or novel question of state common law, that question winds up being decided by a federal court whose jurisdiction has never been determined and may not exist, rather than by the state courts primarily charged with the development and explication of state common law.

For these reasons, I believe the majority's basic holding is simply wrong on general principles. If asked to identify more specific error I would find it in the court's perception that "a federal court has jurisdiction in a removed § 301 action to address the merits of alleged state-law claims during the course of determining its own jurisdiction...." At 1260. From the analysis that follows this assertion, it is plain that by this the majority means that the proper first step for any federal court confronted upon removal with an assertion of § 301 preemption is to address the substantive sufficiency of the state-law claim as pleaded under state law (presumably whether or not its substantive sufficiency has been challenged by the defendant). On this view, a preemption inquiry is then required only if the court first decides that a "colorable" state claim has been stated, at 1262, presumably under the normal stan-

---

disagree—for authority that it may address the state claims for the first time on appeal because *their* proper resolution is supposedly beyond doubt. At 1263 n. 1.

**2.** The one case the majority cites in support, *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), does not stand for the proposition named, that a federal court "possesses the discretion to address a state claim on its merits in the process of determining its own jurisdiction...." At 1263. As I have noted elsewhere, in *Caterpillar* as

> [i]n each of the principal Supreme Court cases dealing with the preemption of removed or pendent state-law claims, the state-law claim directly in issue was one whose existence and essential elements were indisputably established under state law and could simply be referred to by the federal court as there defined.

*Washington v. Union Carbide Corp.*, 870 F.2d 957, 965 n. 2 (4th Cir.1989) (Phillips, J., dissenting) (citations omitted).

Further, the majority cannot rely on our prior decision in *Washington* for the proposition that

> "district courts possess the discretion to dismiss insubstantial state claims both in original and removed cases...." At 1263. This was not "made clear," *id.*, in *Washington*, for that case addressed district court discretion only where state claims were pendent to original federal jurisdiction. It is precisely the extension of that holding to removal cases that is here at issue.

**3.** A form of bootstrapping that goes far beyond the traditionally accepted form in which a jurisdictional determination not directly challenged may effectively create jurisdiction under res judicata principles by precluding collateral attack. *See Durfee v. Duke*, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963). It may be that the majority has sought to bring the process here within this accepted form by suggesting that the merits determination here is in some way a part of the process of determining the removal court's jurisdiction by preemption. At 1262. But this directly contradicts the majority's basic premise that if the state-law claim is found "invalid," this avoids any need to make a determination of jurisdiction by conducting a preemption inquiry. At 1260.

dards for assessing the substantive sufficiency of claims as pleaded. If, however, the court decides that no "colorable" state-law claim has been stated, no preemption inquiry is required; the action is properly dismissed on the merits under state law, and that is the end of it.

I believe that in this the majority simply misperceives the extent to which, and the purpose for which, a federal court must necessarily inquire into a removed state-law "cause of action" in resolving a claim of § 301 preemption. There is no doubt that some federal inquiry into the "state-law cause of action" is now required to apply the "independent claim" test of § 301 preemption under *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). But that inquiry need only identify the essential elements of the general cause of action pleaded in order to tell whether adjudication of such a claim would necessarily require interpretation of a collective bargaining agreement. That is the limited purpose and function of the § 301 preemption inquiry as now mandated by *Lingle. See id.*, 108 S.Ct. at 1881–83 (analysis focussed upon elements of state tort remedy as generally applied). Making such an inquiry obviously does not require deciding the state-law claim on the merits. And because federal jurisdiction here depends entirely upon § 301 preemption, deciding the claim on the merits cannot properly precede and thereby finesse the preemption/jurisdictional inquiry.[4]

In sum, and with all respect, I think the majority has converted the true principle that inquiry into the nature of a removed state-law cause of action is a necessary first step in conducting the § 301 preemption/jurisdictional inquiry into a general license for federal court adjudication of removed state-law claims without any inquiry into the asserted basis for the federal court's removal jurisdiction. Considerations of economy and repose obviously cannot justify the fundamental intrusion on state sovereignty interests that results from such an assumption of federal and ouster of state jurisdiction.[5]

From this it follows that I think the court errs here in finessing the difficult preemption issues which, in my view, were rightly addressed but wrongly decided by the district court. Because I think we should reverse the district court's preemption decision, I turn to that.

## II

As the majority opinion recites, the plaintiff here alleged three types of Maryland common law tort claims whose preemption under § 301 was then put in issue. One involved a single claim of wrongful discharge in violation of state public policy against retaliation for filing a workers' compensation claim. Another involved a single claim of wrongful discharge in violation of state public policy against employment discrimination on the basis of worker handicap. Another involved multiple claims of intentional infliction of emotional distress growing out of various disputes over employment terms and conditions. Effectively, for preemption purposes, this presented only two distinct tort remedies requiring separate analysis: one involving two claims, for abusive or wrongful discharge in violation of state public policy; the other, involving four claims, for intentional infliction of emotional distress.

The district court, directly addressing the preemption issue, found both types of state tort remedies, hence all claims, preempted.

---

**4.** This differentiates the situation here from one in which the claim of § 301 preemption is with respect to a state-law claim as to which there is another, independent basis for federal jurisdiction, i.e., pendent or diversity. In the latter situation, there can be no question of the federal court's jurisdiction to decide such a claim whether or not it is found preempted; the only question could be the propriety of doing so where it is found not preempted. *See, e.g.,*

*Washington v. Union Carbide Corp.,* 870 F.2d 957 (4th Cir.1989).

**5.** As apparent, my concerns about whether a federal removal court may, *as an aspect of determining its jurisdiction,* decide state-law claims on the merits is quite other than "a simplistic model of federalism based on the notion that only state courts may decide questions of state law and only federal courts may decide questions of federal law." At 1263.

In summary, the court concluded that because the issue necessarily raised by both types of state tort claims were "inextricably intertwined" with any provisions of the collective bargaining agreement regarding the employer's duty of care, the state tort claims were preempted. The district court's analysis was based upon its understanding of pre-*Lingle* decisions of the Supreme Court. *Lingle*, decided later, made clear that the district court's understanding of those earlier decisions and hence its preemption analysis was wrong.

As indicated in Part I of this opinion, *Lingle* emphasized what may not have been too clear from those earlier decisions—that the proper inquiry is whether the state-law claim can be adjudicated independently of, i.e., without any need for interpretation of the relevant collective bargaining agreement, not whether there would necessarily be factual overlap between any state-law analysis and a contractual analysis under such an agreement. The *Lingle* Court, in the process of disapproving the very analysis employed by the court of appeals in that case and the district court here, put it this way:

> [E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 preemption purposes.

108 S.Ct. at 1883.

Under the analysis mandated by *Lingle*, I would hold that none of plaintiffs' state law claims was preempted by § 301.

I will take the intentional infliction of emotional distress and abusive discharge claims in that order.

### A

Under *Lingle*'s preemption analysis, the first step is to identify the essential elements of the Maryland state-law tort of intentional infliction of emotional distress. As recently discussed by the Maryland Court of Appeals in *Young v. Hartford Accident & Indemnity Co.*, 303 Md. 182, 492 A.2d 1270, 1277 (1985), those elements are: (1) extreme or outrageous conduct by a defendant, which (2) was done recklessly or with the intent to cause emotional distress, and (3) did cause severe emotional distress (4) under circumstances not privileged by the fact that the defendant was simply insisting upon his legal rights in a permissible way. I would hold that such a tort claim is not preempted by § 301 under *Lingle*'s "independent claim" test.

At first blush it might appear that adjudication of such a tort claim would necessarily require interpreting the relevant collective bargaining agreement—particularly with respect to element (4), the lack of any "permissible exercise of legal right" privilege—in order to assess the possible justification for the defendant-employer's conduct. A series of Ninth Circuit cases seemingly adopts this view in finding comparable state-law emotional distress claims preempted. *See, e.g., Newberry v. Pacific Racing Assoc.*, 854 F.2d 1142 (9th Cir.1988) (adjudicating state-law claim requires decision on justification for conduct under collective bargaining agreement); *Miller v. AT & T Network Systems*, 850 F.2d 543, 550 (9th Cir.1988) ("requires inquiry into appropriateness of the defendant's behavior").

With all respect, I think this analysis is flawed. A comparable analysis would lead to preemption of state-law retaliatory discharge claims of the very type found not preempted in *Lingle* itself. With respect to that tort too it could be said that to determine whether a discharge was "retaliatory" a court must necessarily look to the collective bargaining agreement for its possible justification of the discharge, e.g., to whether it was for any "just cause" recognized by the agreement. That indeed was the analysis employed to find preemption by the court of appeals in *Lingle*, an analysis then specifically rejected by the Supreme Court. *See Lingle*, 108 S.Ct. at 1882–83 (whether reason for discharge was nonretaliatory requires "factual inquiry [that] does not turn on the meaning of any provision of a collective-bargaining agreement"); *cf. Allis–Chalmers v. Lueck*, 471 U.S. 202, 216, 105 S.Ct. 1904, 1913, 85 L.Ed.2d 206 (1985) (state tort remedy for

bad-faith handling of claim for disability benefits authorized in collective-bargaining agreement preempted because duty of insurer in handling claims necessarily "ascertained from a consideration of the contract itself").

Just as the *Lingle* Court recognized that adjudication of a state-law retaliatory discharge claim "might well involve attention to the same factual considerations as the contractual determination of whether someone was fired for just cause," 108 S.Ct. at 1883, so adjudication of a state-law emotional distress claim "might well involve attention to the same factual considerations as the contractual determination" of whether the conduct alleged was a permissible exercise of employer rights. But just as the parallelism between the state tort remedy for retaliatory discharge and the contractual grievance of a "no just cause" discharge were held in *Lingle* not to give rise to preemption, neither should the mere parallelism between an emotional distress claim and a contractual grievance of the same underlying conduct. Quite unlike the state-law claim at issue in *Allis–Chalmers,* a state-law emotional distress claim may be adjudicated without any need to interpret the meaning of a collective-bargaining agreement between the parties.

I would therefore hold the emotional distress claims here independent of such an agreement, so not preempted by § 301, and would remand them to the state court from which they were removed.

### B

The question of the possible preemption of Childers' two claims of "abusive discharge" for violation of separate state policies—one found in Maryland's workmen's compensation law, the other in its handicapped workers law—is more difficult.

It would not be at all difficult if the "abusive" or "retaliatory" discharge tort recognized in Maryland were unmistakably the same abusive discharge tort as that

generally recognized—increasingly in recent time—in many states. As generally recognized, such a claim requires proof that (1) the employee was discharged or threatened with discharge (2) for reasons violative of a recognized public policy of the state. *See, e.g., Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978); *Harless v. First Nat'l Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978). Under the *Lingle* independent claim test, such state-law tort claims are not preempted by § 301—indeed this was precisely the type state-law claim held not preempted in *Lingle,* 108 S.Ct. at 1882–83 (claim of retaliatory discharge for filing state workers' compensation claim).

In 1981, Maryland's highest court, answering a question certified to it by a federal district court, recognized the existence of such a tort remedy in *Adler v. American Standard Corp.,* 291 Md. 31, 432 A.2d 464 (1981), an action brought by a nonunion employee. As there recognized, its elements were the same as those generally recognized in other states, *see id.,* 432 A.2d at 473, and the *Adler* court did not purport to limit this remedy to nonunion employees.

In 1988, however, Maryland's highest court held in *Ewing v. Koppers Co.,* 312 Md. 45, 537 A.2d 1173 (1988), a union employee's action claiming retaliatory discharge for filing a workers' compensation claim, that when asserted by such an employee, the *Adler* tort remedy was substantially curtailed. Specifically, the remedy could only be made available to union employees as a supplemental remedy to any contractual remedy for the same employer conduct previously awarded in arbitration under a labor contract. So construed, the remedy could only be asserted after a favorable resort by the employee to such grievance procedures; if such a grievance was pursued and rejected, no state claim could be maintained.[6]

The majority here, addressing the union employee's *Adler* tort claims on the merits,

---

6. In *Ewing,* this holding resulted in dismissal of the employee's retaliatory discharge claim because in earlier arbitration of his parallel grievance under the collective bargaining agreement, it was determined that he had been discharged for "good cause." 537 A.2d at 1178–79. In a

later case, *Allen v. Bethlehem Steel Corp.,* 76 Md.App. 642, 547 A.2d 1105 (1988), Maryland's intermediate appellate court applied the other side of *Ewing*'s holding to uphold a union employee's right to maintain an *Adler* tort action following *successful* arbitration of his parellel

interprets *Ewing* as a deliberate decision by the Maryland Court of Appeals to accommodate state law to federal preemption law by shaping the state tort remedy in a way that avoids any possibility of inconsistent results between federal arbitration and state court adjudications respecting the same employer conduct. At 1264–1265. In the majority's view, this reflected a considered judicial decision that as a matter of state labor policy the tort remedy should be so limited in deference to, but not under compulsion of, the federal labor law policies reflected in § 301. *Id.* at 1265.

This leads to my second point of disagreement with the majority. Looking at *Ewing* for the related, but distinctly separate, purpose of assessing its impact on the preemption inquiry mandated by § 301, I would interpret it quite differently. In my view, *Ewing*'s curtailment of the *Adler* tort remedy for union employees reflects an erroneous perception that § 301 compelled the curtailment; that *only* in such a modified form could the state tort remedy avoid outright preemption when brought by a union employee. Rightly read, that is,

*Ewing* indicates a state judicial perception that *but for* federal preemption under § 301, the *Adler* remedy should be equally available to union and nonunion employees insofar as state policy interests are concerned. *See Makovi v. Sherwin–Williams Co.*, 75 Md.App. 58, 540 A.2d 494, 497 (1988) (post-*Adler* state court decision so reading *Ewing*). Put somewhat differently, *Ewing* reflects a judicial intention to give the *Adler* tort remedy the widest reach possible for union employees under federal preemption law,[7] not, as the majority reads it, a judicial intention voluntarily to yield primacy, as a matter of state labor law policy, to parallel federal policies and mechanisms for resolving labor disputes.

As indicated, I believe that in holding as it did, the *Ewing* court simply (and understandably) misinterpreted federal preemption law as it stood in the pre-*Lingle* period. *Lingle* itself, decided some three months after *Ewing*, expressly held that exactly the same type tort claim by a union employee under Illinois law was not preempted under the appropriate preemption test.[8]

grievance under the collective bargaining agreement.

7. There are plain indications in the *Ewing* opinion that this was the basis and purpose of the court's modification of the *Adler* remedy for union employees. The court opened by stating that, "[r]esolution of this appeal requires consideration of the scope of federal pre-emption in the field of labor law, as well as consideration of the doctrine of mutual collateral estoppel." 537 A.2d at 1173. After noting that the abusive discharge claim recognized in *Adler* was that of an at-will nonunion employee, the court emphasized that the policy which underlay its recognition there was equally applicable to union employees under collective bargaining agreements, and therefore specifically held that the claim also "exists in favor of union employees." *Id.* at 1175. Then, however, the court observed that the question remained "whether federal preemption principles preclude recovery in this case" by such an employee. *Id.*

From that point on, the unmistakable thrust of the opinion is to curtail the *Adler* claim only so far as compelled by federal preemption law. The court first concluded, though tentatively, that Congress may not have intended § 301 completely to preempt all such state tort claims, and that state interests were sufficiently powerful that union employers should not be allowed completely to opt out of state regulations protective of those interests. *Id.* at 1177–78. But the

court then concluded that federal preemption policies at least compelled first resort to collective bargaining contract grievance procedures to determine, with preclusive effect, "the issues with respect to the discharge." *Id.* Inexorably then, the court held that federal preemption law left room only for the prosecution by union employees of claims for "supplemental" state tort remedies after arbitration of a parallel grievance under the labor contract had yielded a favorable result. *Id.* Hence, on the facts of the case before it, federal preemption law precluded maintenance of the claim because of a prior adverse labor arbitration decision. *Id.* at 1179. In the court's express view, "it is manifestly clear that § 301 does not permit" a state tort claim to succeed where this would be inconsistent with facts determined in arbitration of a parallel labor contract grievance. *Id.* at 1178.

8. In specific terms, *Lingle* points up two ways in which the *Ewing* court misinterpreted then extant federal preemption law. First, in its basic understanding of the preemption test as formulated in *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), upon which the *Ewing* court primarily relied. Just as did the court of appeals in *Lingle* (and as had other lower federal courts) the *Ewing* court apparently misread the import of the statement in *Allis–Chalmers* that the test of preemption is

I am satisfied that the Maryland courts, if confronted with the same type abusive discharge claim today, would hold, consistent with *Lingle*'s clarification, that the *Adler* tort remedy for abusive discharge is the same for union as for nonunion employees.[9]

On that basis, I would hold here that Childers' state-law tort claims for abusive and retaliatory discharge are not preempted by § 301, and accordingly would remand them to the state court from which they were removed.

"whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." 471 U.S. at 213, 105 S.Ct. at 1912. The *Ewing* court, with others, understandably interpreted this essentially *to* mandate an inquiry into whether there are common issues necessarily to be addressed in arbitrating and adjudicating parallel labor contract grievances and state-law claims respecting the same employer conduct. *See Ewing,* 537 A.2d at 1176–77. *Lingle,* clarifying the test, emphasized that a proper inquiry into the "independence" of the state law claim focussed not upon the possibility of "overlap" of issues between the two parallel proceedings, but upon whether adjudication of the state-law claim would inevitably require interpretation of the labor contract. *Lingle,* 108 S.Ct. at 1882–83. Mere "parallelism" of the two analyses, said the *Lingle* Court, does not "render[ ] the state-law analysis dependent upon the contractual analysis." *Id.* at 1883.

In a related way, *Lingle* flatly rejects the *Ewing* court's perception (again, quite an understandable one at the time) that the preemption policy expressed in § 301 at a minimum requires, as a precondition to maintenance of a state-law claim, the prior exhaustion of labor contract grievance procedures in order to insure primacy for the critical determinations made pursuant to federal law and procedures. Instead, as the *Lingle* Court pointed out, preemption law does not preclude the possibility that a state-law claim challenging particular employee conduct might succeed despite an arbitrator's decision that the same conduct violated no labor contract rights of the employee. *Lingle,* 108 S.Ct. at 1885.

9. Though the purpose of this federal court inquiry into the current state of state law is not the usual one of finding the appropriate rule of decision to apply in resolving an issue on the merits, I see no reason why the usual principles guiding the federal court's search are not in play here as well. The purpose of this search is the closely related one of identifying the elements of a state-law tort claim for purposes of deciding whether, as defined by state courts, it is federally preempted. Here as in the more usual context we must be "free ... to consider all the data the highest court of the state would use in an effort to determine how the highest court of the state would decide." C. Wright, *Federal Courts* 373 (4th ed. 1983). Certainly preeminent among that data would be a decision of the Supreme Court of the United States drawing directly in question critical premises of the state's highest court's most recent pronouncement on the nature of the remedy.