Catherine OWEN, Plaintiff–Appellant,

v.

The CARPENTERS' DISTRICT COUNCIL, Defendant–Appellee,

and

Edward Shaw, Defendant.

No. 97–2142.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 21, 1998.

Decided Nov. 30, 1998.

**ARGUED**: Joe Carl Ashworth, Leonardtown, Maryland, for Appellant. H. Victoria Hedian, Abato, Rubenstein & Abato, P.A., Baltimore, Maryland, for Appellee. **ON BRIEF**: Paul D. Starr, Abato, Rubenstein & Abato, P.A., Baltimore, Maryland, for Appellee.

Before WIDENER, HAMILTON, and LUTTIG, Circuit Judges.

Vacated and remanded by published opinion. Judge Hamilton wrote the opinion, in which Judge Widener and Judge Luttig joined.

## OPINION

HAMILTON, Circuit Judge:

After being discharged by The Carpenters' District Council of Washington, D.C. and Vicinity (the Council), Catherine Owen filed this action in the Circuit Court for Prince George's County, Maryland, alleging a wrongful discharge claim against the Council and claims of assault and battery against her former supervisor, Edward Shaw. With respect to her wrongful discharge claim, Owen alleged that her discharge was because she rebuffed Shaw's sexual advances and was in retaliation for complaining about sexual harassment, thereby violating Maryland public policy. With respect to her assault and battery claims, Owen alleged that "Shaw's actions in verbally abusing [her] placed her [in] fear of an imminent harmful and offensive touching and his subsequent touching of [her] was considered by [her] to be offensive." (J.A. 10). The Council removed the action to the United States District Court for the District of Maryland, claiming that Owen's wrongful discharge claim was preempted by § 301 of the Labor Management Relations Act of 1947 (LMRA or § 301), 29 U.S.C. § 185(a). The district

court found that Owen's wrongful discharge was preempted by § 301 of the LMRA and therefore properly removed. The district court dismissed with prejudice Owen's wrongful discharge claim because Owen failed to exhaust her contractual/administrative remedies as required by the LMRA. The district court also dismissed with prejudice the assault claim, concluding that the claim was barred by the applicable Maryland statute of limitations. Finally, the district court remanded the sole remaining claim, the battery claim, to state court.[1]

Because we conclude that Owen's wrongful discharge claim is not preempted by § 301 of the LMRA, we vacate the district court's judgment and remand the case to the district court with instructions to remand Owen's wrongful discharge claim to the Circuit Court for Prince George's County, Maryland.

I

Because this case comes before us after a grant of summary judgment, we must construe the facts in the light most favorable to the non-moving party, here Owen, and draw all justifiable inferences in her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Smith v. Virginia Commonwealth University*, 84 F.3d 672, 675 (4th Cir.1996) (en banc).

Owen was employed by the Council from June 1995 until March 1996. She was hired by Shaw, the Council's Secretary–Treasurer, initially as a clerical employee, but was promoted to office manager in August 1995. As office manager, Owen reported to Shaw. The parties agree that Owen was an at-will employee.

Shortly after she was hired, Owen was named shop steward for the bargaining unit comprised of the Council's office employees, who were represented for purposes of collective bargaining by Local 2 of the Office & Professional Employees International Union (the Union). The terms and conditions of

---

1. Owen does not challenge on appeal the district court's disposition of her assault and battery claims.

employment of those employees were governed by a collective bargaining agreement (CBA) between the Union and the Council.

Several provisions of the CBA are relevant to this case. First, Article X of the CBA provides in part that the Council "shall not discontinue the services [of an employee] except for just and sufficient cause." (J.A. 30). Second, Article XII of the CBA establishes a procedure for the resolution of grievances. Article XII, § 1, defines a grievance as "any controversy or dispute between the parties relating to any matter of wages, hours, and working conditions, or any dispute between the parties involving interpretation or application of any provisions of this Agreement." *Id.* According to Article XII, § 1, Step 1, a grievance must be first presented to the Secretary–Treasurer of the Council. If the claim is not resolved at this stage, the claim proceeds under Article XII, § 1, Step 2, which requires the employee, a representative of the Union, and the Secretary–Treasurer of the Council to meet to discuss the grievance. If the claim is not resolved at this stage, Article XII, § 2, allows the parties to proceed to arbitration.

Shortly after Owen was hired, Shaw began to sexually harass her. For example, throughout the fall of 1995, Shaw told Owen that "as long as she took care of him," he would ensure that her husband, who was a journeyman carpenter, would receive referrals through the Council. (J.A. 6). Owen objected to these comments because they suggested to her that her family's economic well-being hinged on her acquiescence to Shaw's sexual advances. In addition, Shaw made lewd comments in the presence of Owen, "including constantly using a slang epithet for sexual intercourse." (J.A. 7).

In November 1995, while Owen was alone with Shaw in Shaw's office, Shaw placed his arms around Owen's waist and placed his groin against her buttocks. While in this position, Shaw told Owen that he needed her "to stay and work as many hours as necessary to get the job done, if you know what I mean." (J.A. 8). Owen immediately pulled away from Shaw and left his office.

In December 1995, Owen discussed Shaw's conduct with Joseph Stanilonis, a trustee and delegate of the Council. Stanilonis agreed with Owen that Shaw's conduct was inappropriate, and Stanilonis agreed to counsel Shaw. Although it is unclear whether any such counseling took place, Shaw's conduct continued unabated.

On February 26, 1996, Owen was suspended. According to Shaw, he suspended Owen "after discovering inconsistencies and misstatements in her resumes and employment history." (J.A. 22). On that same day, the Union filed a grievance with the Council on Owen's behalf. On March 8, 1996, Shaw denied the grievance under Step 1.

On March 18, 1996, Owen's suspension was converted to a discharge. On March 21, 1996, Owen, representatives of the Union, and Shaw met to discuss Owen's grievance. On April 8, 1996, Shaw denied the grievance under Step 2.

On April 16, 1996, the Union informed the Council that it was going to proceed to arbitrate Owen's grievance. On May 22, 1996, the Union notified the Council that the Union was withdrawing Owen's grievance. According to Owen, she asked the Union to withdraw her grievance because the "statutory remedies for sexual harassment would provide her more complete relief than what could be accomplished through the arbitral process." Appellant's Brief at 5.

On February 25, 1997, Owen brought this action in the Circuit Court for Prince George's County, Maryland, alleging a wrongful discharge claim against the Council and claims of assault and battery against Shaw. The Council removed the action to the United States District Court for the District of Maryland, claiming that Owen's wrongful discharge claim was preempted by § 301 of the LMRA. On April 16, 1997, the Council and Shaw moved to dismiss, or in the alternative for summary judgment. Because the district court considered matters outside the pleadings, the parties agree that the district court appropriately treated the motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The district court found that Owen's wrongful discharge was preempted by § 301 of the LMRA and therefore properly removed.

The district court dismissed with prejudice Owen's wrongful discharge claim because Owen failed to exhaust her contractual/administrative remedies as required by the LMRA. The district court also dismissed with prejudice the assault claim, concluding that the claim was barred by the applicable Maryland statute of limitations. Finally, the district court remanded the sole remaining claim, the battery claim, to state court. Owen appeals only that component of the district court's judgment that dismissed with prejudice her wrongful discharge claim.

## II

Owen contends that the district court erred in concluding that her wrongful discharge claim was preempted by § 301 of the LMRA and, therefore, her wrongful discharge claim should be remanded to state court. Owen's wrongful discharge claim alleges that she was discharged because she rebuffed Shaw's sexual advances and in retaliation for complaining about sexual harassment. The district court found that Owen's wrongful discharge claim was preempted by § 301 of the LMRA, and the Council argues that this decision was correct because resolution of Owen's wrongful discharge claim depends upon interpreting the just cause provision of the CBA.

Under 28 U.S.C. § 1441(a), a defendant may remove any civil action to federal court if the plaintiff's complaint presents a federal question, such as a federal cause of action. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). However, a defendant may not remove a civil action on the basis of a defense of federal preemption, even if the defense is anticipated in the complaint, and even if preemption is the only issue in the case. *See id.* at 393, 107 S.Ct. 2425. Consequently, federal question jurisdiction is determined by the "well-pleaded complaint" rule, which provides that the federal question must be "presented on the face of the plaintiff's properly pleaded complaint" to confer jurisdiction, *id.* at 392, 107 S.Ct. 2425, and the plaintiff "may avoid federal jurisdiction by relying exclusively on state law." *Childers v. Chesapeake & Poto-*

*mac Tel. Co.*, 881 F.2d 1259, 1261 (4th Cir. 1989).

There exists a class of cases where the preemptive force of a statute is so "extraordinary" that any claim based on preempted state law is considered a claim arising under federal law. *Id.* This "complete preemption" corollary to the "well-pleaded complaint" rule applies to claims under § 301 of the LMRA. *Id.* at 1261–62. In effect, the application of complete preemption "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Accordingly, if the plaintiff's state law claim is preempted by § 301 of the LMRA, the action may be removed to federal court even though the plaintiff's complaint does not include a federal cause of action. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 258–64, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994).

Section 301 of the LMRA provides that "[s]uits for a violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Section 301 was enacted with the understanding that federal labor law doctrines would uniformly prevail over inconsistent state law. *See Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). Thus, the goal of § 301 preemption is to promote the uniform interpretation of collective bargaining agreements. *See McCormick v. AT & T Technologies, Inc.*, 934 F.2d 531, 538 (4th Cir.1991) (en banc). Accordingly, § 301 is "more than jurisdictional." *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 451, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). "[I]t authorizes federal courts to fashion a body of federal law for the enforcement of ... collective bargaining agreements and includes within that federal law specific performance of promises to arbitrate grievances under collective bargaining agreements." *Id.*

Deciding when a state law claim is preempted by § 301 of the LMRA is not always a simple task. According to the Supreme Court, preemption occurs only when resolution of a state law claim depends upon the meaning of the collective bargaining agreement, *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), or when resolution of the state law claim is "inextricably intertwined with consideration of the terms of the labor contract." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). However, "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw,* 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994).

The Supreme Court has instructed us not to read § 301 of the LMRA to preempt "nonnegotiable rights conferred on individual employees as a matter of state law." *Id.* at 123, 114 S.Ct. 2068. According to the Supreme Court, whether a state cause of action may proceed in state court depends upon "the legal character of a claim, as independent of rights under the collective bargaining agreement, (and not whether a grievance arising from precisely the same set of facts could be pursued)." *Id.* (citation and internal quotes omitted). This is so because § 301 preemption "merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon interpretation of such agreements." *Lingle,* 486 U.S. at 409, 108 S.Ct. 1877.

Federal courts also have the discretion, in "appropriate case[s]," to address a state claim on the merits before resolving the § 301 preemption inquiry. *Washington v. Union Carbide Corp.,* 870 F.2d 957, 958 (4th Cir.1989). Specifically, if the state law claim is "patently without merit," the district court may dismiss the claim on the merits without reaching the question of whether § 301 preempts the claim. *Childers,* 881 F.2d at 1267. The discretion of the district court to dismiss the state law claim

> is limited to those whose lack of merit is apparent. Where the plaintiff appears to state a claim under state law, a federal district court would be well-advised to proceed to the § 301 inquiry and, if the state claim is not preempted, to remand the entire action to state court. Where the complaint, however, plainly fails to state a cause of action under state law, it is open to the federal court to dismiss it.

*Id.* at 1262. In addition, if the issue of state law is "genuinely unsettled" or "hinge[s] upon disputed facts," the district court "should resolve the § 301 preemption inquiry at the outset of the litigation." *Washington,* 870 F.2d at 961.

The district court concluded that Owen's wrongful discharge claim would require interpretation of the just cause provision of the CBA and therefore was preempted under § 301 of the LMRA. We disagree.

We begin our analysis, as the Supreme Court did in *Livadas,* with the legal character of Owen's state law claim. Under Maryland law, with few exceptions, at-will employment has been held to be terminable by either party at any time for any reason whatsoever. *See Adler v. American Standard Corp.,* 291 Md. 31, 432 A.2d 464, 467 (Md.1981). "The common law rule, applicable in Maryland, is that an employment contract of indefinite duration, that is, at will, can be legally terminated at the pleasure of either party at any time." *Id.* Although the common law at-will rule has not been abrogated, statutory exceptions have been "engrafted" that limit the previously unfettered discretion to discharge at-will employees. *Id.* For example, § 16(a) of the Fair Employment Practices Act (FEPA), Md. Ann.Code, art. 49B, makes it unlawful, *inter alia,* for an employer "[t]o fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ...unrelated in nature and extent so as to reasonably preclude the performance of the employment...." Md. Ann.Code, art. 49B, § 16(a).

In *Adler*, the Court of Appeals of Maryland recognized the common law tort of wrongful discharge, constituting in Maryland the first judicially created exception to the at-will employment doctrine. The *Adler* court reviewed the evolving case law from other jurisdictions, noting that the overwhelming majority that adopted the cause of action defined it as a tort in which the employee may recover damages arising from the employee's discharge under circumstances violating a clear mandate of public policy. 432 A.2d at 469. The "public policy" could derive from statute, judicial decision, administrative regulation, or from any other appropriate source. *Id.* at 471–72. In deciding whether a public policy will support a cause of action, however, the touchstone must be clarity. *Id.* at 472.

In *Makovi v. Sherwin–Williams Co.*, 316 Md. 603, 561 A.2d 179 (Md.1989), the Maryland Court of Appeals limited the scope of a wrongful discharge claim. The *Makovi* court held that the tort of wrongful discharge is "inherently limited to remedying only those discharges in violation of a clear mandate of public policy which otherwise would not be vindicated by a civil remedy." *Id.* at 180. Where the public policy foundation for the wrongful discharge is expressed in a statute, and that statute already contains a remedy for vindicating the public policy objectives, then judicial recognition of a wrongful discharge is considered both redundant and inappropriate. *Id.* at 183–90.

In this case, because the Council employed less than fifteen people at the time Owen was discharged, Owen had no statutory remedy under Maryland law for sexual harassment or retaliation. *See* Md.Ann. Code, art. 49B, § 15(b) (defining "employer" as "a person engaged in an industry or business who has fifteen or more employees....."). Thus, we must address whether the Maryland Court of Appeals would find a clear violation of public policy where an employer of less than fifteen people discharged an employee because the employee rebuffed her supervisor's sexual advances or because the employee complained about being sexually harassed.

In *Molesworth v. Brandon*, 341 Md. 621, 672 A.2d 608 (Md.1996), the Court of Appeals of Maryland held that an employee could assert a wrongful discharge claim against an employer of less than fifteen people where the employee's discharge was because of her sex. *Id.* at 616. In reaching its holding, the court initially noted that Maryland's public policy against sex discrimination was "ubiquitous." *Id.* at 613. The court also noted that there was nothing in the legislative history of FEPA that demonstrated that the General Assembly of Maryland intended to permit employers of less than fifteen people to discriminate on the basis of sex. *Id.* at 614. Rather, the legislative history suggested that § 15(b)'s exemption for small business employers was designed to relieve small business employers from the administrative burdens of FEPA. *Id.* The court further noted that any other interpretation of § 15(b) would give small business employers a license to discriminate, a result never intended by the Maryland General Assembly. *Id.* at 615. Finally, the court distinguished *Makovi* on the basis that in *Molesworth* the purpose of the wrongful discharge tort, "to provide a remedy for otherwise unremedied violations of public policy," was present whereas in *Makovi* it was not. *Id.* at 616.

We believe the Maryland Court of Appeals would recognize a wrongful discharge cause of action where an employee, like Owen, is discharged because the employee rebuffed the sexual advances of her supervisor or because the employee complained about being sexually harassed. First, Maryland's public policy against sex discrimination is "ubiquitous." *Id.* at 613. Second, the purpose of the wrongful discharge cause of action is to provide a cause of action for unremedied violations of public policy where a remedy does not exist. *See id.* at 616. Therefore, wrongful discharge actions are supplementary and not complimentary. In this case, Owen has no statutory remedy. Third, to hold otherwise would give small business employers a license to engage in sexual harassment and to retaliate against an employee for complaining about sexual harassment, a result at odds with the legislative history of § 15(b). *See id.* at 615.

Having decided the Maryland Court of Appeals would recognize a wrongful discharge cause of action where an employer of less than fifteen people discharged an employee because the employee rebuffed her supervisor's sexual advances or because the employee complained about being sexually harassed, we can now proceed to setting forth the relative burdens of the parties in a wrongful discharge suit. Under Maryland law, the tort of wrongful discharge "is defined as the willful termination of employment by the employer because of the employee's alleged failure to perform in accordance with the employer's expectations, and the termination is contrary to a clear mandate of public policy." *Allen v. Bethlehem Steel Corp.,* 76 Md.App. 642, 547 A.2d 1105, 1110 (Md.1988). "Specifically, in order to state a claim for wrongful discharge, the employee must demonstrate: (1) that the employee was discharged; (2) that the dismissal violated some clear mandate of public policy; and (3) that there is a nexus between the defendant and the decision to fire the employee." *Shapiro v. Massengill,* 105 Md.App. 743, 661 A.2d 202, 213 (Md.1995).

To demonstrate her wrongful discharge claim, Owen must demonstrate that she was discharged because she rebuffed Shaw's advances or that she was discharged because she complained about being sexually harassed. *Cf. Molesworth,* 672 A.2d at 620 (noting that plaintiff's burden in a wrongful discharge based on sex case was to prove that "but for the Plaintiff's gender, the Defendant would not have made the decision not to continue the Plaintiff's employment."). In rebutting Owen's claim, the Council is free to argue that the decision to discharge Owen was made for reasons other than sexual harassment or retaliation; namely, that Owen was fired after Shaw discovered "inconsistencies and misstatements in [Owen's] resumes and employment history." (J.A. 22).

Having set forth the parties' relative burdens, we are of the opinion that no reference to the CBA is required to adjudicate Owen's wrongful discharge claim. Owen's wrongful discharge claim involves purely factual questions concerning her conduct and the conduct and motivation of Shaw in reaching his decision to discharge Owen. No reference to the CBA is required to resolve these factual issues. To be sure, the jury in this case will essentially resolve the following question: was Owen discharged because of unlawful discrimination or because of "inconsistencies and misstatements in [her] resumes and employment history"? *Id.* In resolving this simple and straightforward question, the jury will not interpret the just cause provision of the CBA. Thus, there is no chance that the jury's resolution of Owen's wrongful discharge claim will result in state law prevailing over federal labor law doctrines. In any event, the fact that the just cause provision of the CBA may be referred to or consulted during the course of the resolution of Owen's wrongful discharge claim does not militate in favor of finding § 301 preemption. As the Supreme Court noted in *Livadas,* "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." 512 U.S. at 124, 114 S.Ct. 2068.

Our decision is consistent with Supreme Court precedent and case law from this circuit. In *Lingle,* an employee covered by a collective bargaining agreement was fired for filing an allegedly false worker's compensation claim. 486 U.S. at 401, 108 S.Ct. 1877. After filing a grievance pursuant to her collective bargaining agreement, which protected employees against discharge except for "proper" or "just" cause, the employee filed a complaint in state court, alleging that she had been discharged for exercising her rights under Illinois worker's compensation laws. *Id.* at 401–02, 108 S.Ct. 1877. The Seventh Circuit held the employee's state law claim was preempted because "the same analysis of the facts" was required in both the grievance proceeding and the state court action. *Id.* at 402, 108 S.Ct. 1877. The Supreme Court reversed.

The *Lingle* Court recognized that where the resolution of a state law claim depends on an interpretation of the collective bargaining agreement, the claim is preempted. *Id.* at 405–406, 108 S.Ct. 1877. However, the Court also recognized that "purely factual ques-

tions" about an employee's conduct or an employer's conduct and motives do not "require a court to interpret any term of a collective-bargaining agreement." 486 U.S. at 407, 108 S.Ct. 1877. The state law retaliatory discharge claim turned on just this sort of purely factual question: whether the employee was discharged or threatened with discharge, and, if so, whether the employer's motive in discharging her was to deter or interfere with her exercise of rights under Illinois worker's compensation law. While recognizing that "the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause," id. at 408, 108 S.Ct. 1877,the Court disagreed that

> such parallelism render[ed] the state-law analysis dependent upon the contractual analysis. For while there may be instances in which the National Labor Relations Act pre-empts state law on the basis of the subject matter of the law in question, § 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

*Id.* at 408–410, 108 S.Ct. 1877.

In *Lingle*'s wake, we have held that state law claims of handicap discrimination, retaliation, and intentional infliction of emotional distress are not preempted by § 301 of the LMRA. *See Martin Marietta Corp. v. Maryland Commission on Human Relations,* 38 F.3d 1392, 1402 (4th Cir.1994) (state law claims of handicap discrimination and retaliation claim were not preempted by § 301 of the LMRA);*Jackson v. Kimel,* 992 F.2d 1318, 1325–27 (4th Cir.1993) (state tort claim of intentional infliction of emotional distress was not preempted by § 301 of the LMRA because reference to the collective bargaining agreement was unnecessary to determine the duty of care owed). In each of these cases, we recognized that the state law claims were not preempted by § 301 because the claims involved purely factual questions concerning the conduct of the employee and the conduct and motivation of the employer, and because no interpretation of the collective bargaining agreement was required. *See Martin Marietta Corp.,* 38 F.3d at 1402; *Jackson,* 992 F.2d at 1325–27.

Owen's wrongful discharge claim is likewise a poor candidate for § 301 preemption. Like *Lingle, Martin Marietta Corp.,* and *Jackson,*this case primarily concerns the conduct of the employee and the conduct and motivation of the employer. As such, Owen's wrongful discharge claim will not require or depend on an interpretation of the CBA. Owen was discharged because of either unlawful discrimination or "inconsistencies and misstatements in [her] resumes and employment history." (J.A. 22). The resolution of the question of why Owen was discharged does not involve an interpretation of the CBA.

In summary, the district court erred in concluding that Owen's wrongful discharge claim was preempted by § 301 of the LMRA, and, accordingly the case should be remanded to state court.[2]

---

2. The Council contends that we can avoid the preemption inquiry altogether because Owen's wrongful discharge claim is patently without merit. According to the Council, Owen was required under Maryland law to proceed to arbitration prior to bringing suit. This argument is without merit. In *Finch v. Holladay–Tyler Printing, Inc.,* 322 Md. 197, 586 A.2d 1275 (Md.1991), the Maryland Court of Appeals held that exhaustion of arbitral remedies was not a prerequisite

to maintaining a wrongful discharge action unless resolution of the state law claim depended on an interpretation of the collective bargaining agreement. *Id.* at 1279–80. As we have explained in the body of this opinion, resolution of Owen's wrongful discharge claim does not depend upon an interpretation of the CBA. Accordingly, Owen was not required to exhaust her arbitral remedies before bringing her wrongful discharge action in state court.

### III

For the reasons stated herein, the judgment of the district court is vacated and the case is remanded to the district court with instructions to remand Owen's wrongful discharge claim to the Circuit Court for Prince George's County, Maryland.

*VACATED AND REMANDED.*