James METHENEY, et al., Plaintiffs,

v.

MONARCH RUBBER CO., et al., Defendants.

No. Civ.A. 2:98–1227.

United States District Court, S.D. West Virginia, Charleston Division.

April 15, 1999.

Robert P. Martin and Robert L. McKinney, Bastien & Martin, Charleston, WV, for plaintiffs.

Brian D. Yost, Holroyd & Yost, Charleston, WV, for defendants.

### MEMORANDUM OPINION AND REMAND ORDER

HADEN, Chief Judge.

Pending are Plaintiffs' motion to remand and Defendants' motion to dismiss. The motions are ripe for review. After careful consideration, the Court **GRANTS** the motion to remand and **DENIES** as moot the motion to dismiss.[1]

---

1. Pending also is Defendants' motion to strike Plaintiffs' response to Defendants' motion to dismiss as untimely under the Local Rules. *See* L.R. 12.2–(b) (requiring responsive memoranda to be filed within 14 days from the date of service of the original motion). Here, Defendants' motion to dismiss was filed on January 28, 1999; Plaintiffs' response was filed March 9, 1999. Plaintiffs have failed to offer any argument as to why their response should not be struck. After careful consideration, the Court **GRANTS** the motion.

## I. FACTUAL BACKGROUND

Defendant Monarch Rubber Company ("Monarch") operates a manufacturing facility in Spencer, Roane County, West Virginia. Defendants Jerry Greathouse and Ronald Summers are manager and assistant manager, respectively, at Monarch.

Plaintiffs James Metheney, Donald Digman, Tim Evans, Henry Schreckengost, Robert Shafer and James Webb [2] are employees of Monarch and members of the Construction and General Laborers Local Union No. 1353 ("Laborers Local 1353," "Union"). All are residents of Spencer, Roane County, West Virginia.

This civil action arises in the context of a bitter labor dispute between Monarch and the Union. At the time of the alleged occurrences, Plaintiff employees were on strike. In October 1997, and allegedly continuing to the present time, several flyers were distributed by yet unascertained persons which describe Plaintiff employees [3] and Local 1353 members in general as engaging in homosexual prostitution.[4] *See* Exs. 1–4, Complaint. Plaintiffs allege several of the flyers were displayed on the grounds of Monarch's facility with the knowledge of Greathouse and Summers, who did not remove them. Plaintiffs also allege Summers has verbally repeated the flyers' contents on several occasions.

Plaintiffs commenced the instant action on December 1, 1998 in the Circuit Court of Kanawha County, West Virginia, alleging defamation and the tort of outrage under state law. On December 28, Defendants removed to this Court. On January 21, 1999 Plaintiffs moved to remand, and on January 28, Defendants moved to dismiss.

**2.** These particular Plaintiffs will be referred to, collectively, as "Plaintiff employees."

**3.** Plaintiffs allege the persons named in the flyers by name or nickname are Plaintiff employees and would have been known by others to be Plaintiff employees.

## II. DISCUSSION

### A. Removal Jurisdiction

Under 28 U.S.C. § 1441(a), removal is proper whenever the district court has original jurisdiction over the action. Diversity jurisdiction is not available, nor do Defendants argue such. The sole question is whether the Court possesses federal question jurisdiction, stated as "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Removal statutes must be strictly construed and the burden of establishing the propriety of removal is upon the removing parties. *Cline v. Matney*, 20 F.Supp.2d 977, 978 (S.D.W.Va.1998) (Haden, C.J.). " 'Any doubts concerning the propriety of removal must be resolved in favor of retained state court jurisdiction.' " *Bazilla v. Belva Coal Co.*, 939 F.Supp. 476, 477 (S.D.W.Va.1996) (Haden, C.J.) (quoting *Scott v. Greiner*, 858 F.Supp. 607, 610 (S.D.W.Va.1994) (Haden, C.J.) (citations omitted)).

Our Court of Appeals has recently addressed the posture in which a court addresses this scenario. *See Owen v. Carpenters' District Council*, 161 F.3d 767 (4th Cir.1998). Under the well-pleaded complaint rule, a defendant may remove only if the federal question is "presented on the face of the plaintiff's properly pleaded complaint." *Id.* at 772 (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). A federal defense, even if it is a preemption defense and the only issue in the case, is insufficient to confer federal question jurisdiction. *Id.; see also Caterpillar*, 482 U.S. at 398, 107 S.Ct. 2425 ("The fact that a defendant might ultimately prove that a

**4.** The Court's description of the contents of the flyers is somewhat understated and restrained.

plaintiff's claims are pre-empted under the NLRA does not establish that they are removable to federal court.") (footnote omitted); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

### B. Complete Preemption

■ Nonetheless, "[t]here exists a class of cases where the preemptive force of a statute is so 'extraordinary' that any claim based on preempted state law is considered a claim arising under federal law." *Owen,* 161 F.3d at 772 (citing *Childers v. Chesapeake & Potomac Tel. Co.,* 881 F.2d 1259, 1261 (4th Cir.1989)). The "complete preemption" corollary " 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' " *Id.* (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)).

Defendants argue Plaintiffs' state law claims are preempted by the National Labor Relations Act, 29 U.S.C. § 141 *et seq.* ("the Act," "NLRA"), because the activities at issue are "arguably subject to § 7 or § 8 of the Act," *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 244–45, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), such that there is a potential for conflict between the NLRA and the state law.

Section 301 of the LMRA has such "extraordinary" preemptive force as to convert state law claims into federal claims,[5] *see Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 258–64, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994), as does Section 502(f) of ERISA, *see Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65–66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). In determining that ERISA's Section 502(f) completely

preempted state law claims, the Supreme Court cautioned that,

> Even with a provision such as § 502(a)(1)(B) that lies at the heart of a statute with the unique pre-emptive force of ERISA, however, we would be reluctant to find that extraordinary pre-emptive power, such as has been found with respect to § 301 of the LMRA, that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. But the language of the jurisdictional subsection of ERISA's civil enforcement provisions closely parallels that of § 301 of the LMRA.
>
> . . .
>
> [T]he touchstone of the federal district court's removal jurisdiction is not the "obviousness" of the pre-emption defense but the intent of Congress. Indeed, as we have noted, even an "obvious" pre-emption defense does not, in most cases, create removal jurisdiction. In this case, however, Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court.

*Taylor,* 481 U.S. at 65–66, 107 S.Ct. 1542 (citations omitted); *see also id.* at 68, 107 S.Ct. 1542 (Brennan, J., concurring) ("In future cases involving other statutes, the prudent course for a federal court that does not find a clear congressional intent to create removal jurisdiction will be to remand the case to state court.").

### C. Defamation and Tort of Outrage

In *Garmon,* the Supreme Court held that "when an activity is arguably subject to § 7 or § 8 of the Act,[6] the States as well

---

5. Plaintiffs' arguments in their motion to remand notwithstanding, Section 301 is not relevant to the issues at hand because the Court need not interpret or apply any collective bargaining agreement between the parties.

6. Section 7 protects the rights of employees to organize labor unions and collectively bargain. *See* 29 U.S.C. § 157. Section 8(a) de-

fines unfair labor practices by the employer, including interfering with, restraining, or coercing employees in the exercise of their Section 7 rights, while Section 8(b) defines unfair labor practices by the labor union. *See id.* § 158(a), (b). Section 8(c) provides free expression of views shall not constitute an unfair labor practice "if such expression con-

as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." 359 U.S. at 245, 79 S.Ct. 773. This principle arises from recognition of Congress's intent as embodied in the NLRA.

> Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes towards labor controversies.... A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law.

*Id.* at 242–43, 79 S.Ct. 773 (quoting *Garner v. Teamsters Local 776,* 346 U.S. 485, 490–91, 74 S.Ct. 161, 98 L.Ed. 228 (1953)). Despite the general rule of preemption, the Supreme Court recognized "where the regulated conduct touched interests so deeply rooted in local feeling and responsibility ... in the absence of compelling congressional direction," the state cause of action was not preempted. *Id.* at 244, 79 S.Ct. 773.

In *Linn v. Plant Guard Workers, Local 114,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), the Supreme Court applied this anticipated exception. The Court stated that, although the NLRA "tolerates intemperate, abusive and inaccurate statements made by the union during attempts to organize employees," the NLRA does not give "either party license to injure the other intentionally by circulating defamatory or insulting material known to be false."[7] *Id.* at 61, 86 S.Ct. 657. Instead, a suit for "libel issued with knowledge of its falsity or with reckless disregard" of its truth is a merely peripheral concern of the LMRA. *Id.* at 61. An "'overriding state interest' in protecting its residents from malicious libels" justifies excepting defamation actions arising in labor disputes from *Garmon* preemption. *Id.*

Finally, the Supreme Court noted "there was little risk that the state cause of action would interfere with the effective administration of national labor policy." *Farmer v. United Bhd. of Carpenters, Local 25,* 430 U.S. 290, 298, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (reviewing the *Linn* holding). The state defamation action would not include necessary elements of an unfair labor practice claim before the National Labor Relations Board—that the statements were misleading or coercive— and the Board's unfair labor practice pro-

---

tains no threat of reprisal or force or promise of benefit." *Id.* § 158(c). The remaining subsections of Section 8 arguably are not relevant. *Id.* § 158(d)–(f).

**7.** Although Plaintiffs seek remand, they inexplicably attempt to establish factual distinctions between their case and *Linn* and its progeny. Specifically, Plaintiffs characterize *Linn* as applying only to "statements which are arguably a part of the collective bargaining process." Pls.' Reply to Mot. to Remand at 5. In fact, although the *Linn* opinion refers to some of the particular consequences of defamation in an organizing campaign, *see*

383 U.S. at 58, 63, 86 S.Ct. 657, the opinion repeatedly states the issue more broadly, *see, e.g.,* 383 U.S. at 57, 86 S.Ct. 657 ("libels published during labor disputes"); *id.* at 63, 86 S.Ct. 657 ("Nor does the fact that defamation arises during a labor dispute give the Board exclusive jurisdiction to remedy its consequences."). Finally, the Supreme Court has since characterized *Linn* as recognizing an exception to *Garmon* preemption for "malicious libel," *Farmer,* 430 U.S. at 297, 97 S.Ct. 1056, without narrowing the exception to libel during an organizing campaign.

ceeding would not address whether the statements were defamatory. *Id.* (citing *Linn*, 383 U.S. at 63, 86 S.Ct. 657). Furthermore, the Board lacked authority to award damages or other relief to an allegedly defamed individual. *Id.*

Nonetheless, recognizing the need to protect the "ardor of labor debate," the Supreme Court limited the state defamation action to "those instances in which the complainant can show that the defamatory statements were circulated with malice and caused him damage." *Linn*, 383 U.S. at 65, 86 S.Ct. 657 (also requiring plaintiff to prove actual damage "which may include general injury to reputation, consequent mental suffering, alienation of associates, specific items of pecuniary loss, or whatever form of harm would be recognized by state tort law").

The *Linn* exception was subsequently extended to a claim of intentional infliction of emotional distress when the state tort is "either unrelated to [the alleged unfair labor practice] or a function of the particularly abusive manner in which the [alleged unfair labor practice] is accomplished or threatened rather than a function of the actual or threatened [practice] itself." *Farmer*, 430 U.S. at 305, 97 S.Ct. 1056.

█ At least one district court has examined extensively whether Sections 7 and 8 of the NLRA completely preempt claims of defamation arising from a labor dispute so as to provide federal question jurisdiction. *See Box Tree South, Ltd. v. Bitterman*, 873 F.Supp. 833 (S.D.N.Y.1995). In its detailed analysis on a claim closely analogous to the instant one, the *Box Tree* court found

> [w]hile the Supreme Court has found that federal labor law provides limited preemption of state law libel claims arising in labor disputes, that preemption is not complete preemption, which would federalize causes of action and thus create federal question removal jurisdiction.
>
> . . .

There is no reason, based on *Linn*, to take the present case outside the normal rule that a preemption defense does not create a basis for removal of a state claim to federal court. Rather, whatever preemption defense there is can be asserted as a defense in state court.

*Id.* at 840, 842. Consequently, the *Box Tree* court remanded the action to state court. Defendants have presented no contrary authority so thoroughly discussing the particular issue of complete preemption, nor can the Court locate any. Indeed, the *Box Tree* court's analysis is persuasive. The Court concludes there is no preemptive force so " 'extraordinary' " as to constitute complete preemption. Whatever preemption defenses exist, Defendants may raise before the state tribunal. Further, for the purposes of the remand motion, the Court assumes, but does not decide, the published statements about certain of Plaintiff employees reach the level of both malicious libel and the tort of outrage, sanctionable by state law.

Defendants raise several arguments, both in their motion to dismiss and their responsive memorandum to Plaintiffs' motion, that Plaintiffs have failed to state a claim for relief. Defendants also argue the Circuit Court of Kanawha County lacks venue over the action. Because the Court lacks jurisdiction over the case, it may not resolve these issues.

### III. CONCLUSION

Accordingly, the Court (1) **GRANTS** Plaintiffs' motion to remand; (2) **DENIES** as moot Defendants' motion to dismiss; and (3) **REMANDS** the case to the Circuit Court for Kanawha County. The remand is fully effective this date for all purposes.

The Clerk is directed to send a copy of this Memorandum Opinion and Remand Order to all counsel of record and any unrepresented parties as well as to return the file with a certified copy of this Order

to the Clerk of the Circuit Court of Kanawha County.